UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH J. RIMKUS<br>3044 Avalon Terrace Drive<br>Valrico, Florida 33594-5601<br><br>      Plaintiff<br><br>      v.<br><br>ISLAMIC REPUBLIC OF IRAN,<br>Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street<br>Tehran, Iran,<br><br>THE IRANIAN MINISTRY OF<br>INFORMATION AND SECURITY<br>Pasdaran Avenue<br>Golestan Yekom<br>Tehran, Iran,<br><br>and<br><br>IRANIAN ISLAMIC REVOLUTIONARY<br>GUARD CORPS<br>Pasdaran Avenue<br>Golestan Yekom<br>Tehran, Iran<br><br>      Defendants. | Case No._____ |

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT**

On June 25, 1996, nineteen American servicemen were killed in the terrorist bombing of Khobar Towers, a residential military complex operated by the United States Air Force in Dhahran, Saudi Arabia. Terrorist members of Hizbollah, funded by the Islamic Republic of Iran,

planned and committed the bombing. The Iranian Ministry of Information and Security and the Iranian Islamic Revolutionary Guard Corps funded, trained, and otherwise assisted Hizbollah in executing the bombing. Plaintiff is the father of Airman First-Class Joseph E. Rimkus, a serviceman killed in the attack.

The Hizbollah terrorist organization was at all relevant times a creation and agent of the Islamic Republic of Iran. Iran has provided funds, training, and direction to Hizbollah for over a decade. In 1995, Hizbollah began plotting a terrorist attack against United States interests in Saudi Arabia. Hizbollah selected Khobar Towers as the target, developed a plan, purchased explosives, and detonated a bomb outside Khobar Towers on June 25, 1996. At all relevant times, the Islamic Republic of Iran has funded, trained, and directed Hizbollah via the Iranian Ministry of Information and Security and the Iranian Islamic Revolutionary Guard Corps. Therefore, Defendants are liable and responsible under United States law for this terrorist attack and the murder of Airman First-Class Joseph E. Rimkus.

Plaintiff moves for judgment against Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security and the Iranian Islamic Revolutionary Guard Corps, jointly and severally. In support of his Complaint, Plaintiff alleges as follows:

**JURISDICTION, VENUE, CHOICE OF LAW, AND CAUSES OF ACTION**

1. Defendants, the Islamic Republic of Iran, The Iranian Ministry of Information and Security, and the Iranian Revolutionary Guard Corps, are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7).

2. Subject Matter Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1330(a), 1331, and 1332(a)(2).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

4. Actions for solatium and intentional infliction of emotional distress perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents – within the meaning of 28 U.S.C. § 1605(a)(7) – are unique causes of action arising out of federal counter-terrorism statutes and are controlled by federal law.

5. The causes of action set forth in the Counts alleged herein are based upon the following sources of law:

    A. 28 U.S.C. § 1605(a)(7) and the Flatow Amendment;

    B. 28 U.S.C. § 1606 as to claims against the Islamic Republic of Iran;

    C. Federal common law;

    D. Florida common law as to claims of intentional infliction of emotional distress; and

    E. International law, as set forth primarily in §§ 701 *et seq.* of the Restatement (Third) of Foreign Relations Law. In this instance, Defendants violated a definable, universal, and obligatory norm of international character accepted by the civilized world. One who commits an extra-judicial murder by terrorism is *hostis humani generis*, an enemy of all mankind.

## PARTIES

6. Plaintiff Joseph J. Rimkus is a United States citizen and a resident of the State of Florida. He is the father of Joseph E. Rimkus, a United States Air Force Airman killed in the June 25, 1996 terrorist bombing of Khobar Towers in Dhahran, Saudi Arabia. Joseph E. Rimkus was, at all applicable times, a citizen and national of the United States. Joseph E. Rimkus was

the victim of an "extrajudicial killing" pursuant to 28 U.S.C. §§ 1350 note, 1605(a)(7), and 1605(e)(1).

7.      Defendant Islamic Republic of Iran ("Iran") is a foreign state. On January 19, 1984, Iran was designated a state sponsor of terrorism and remains a state sponsor of terrorism pursuant to 50 U.S.C. Appx. § 2405(j). Iran sponsors and provides material support and resources including funds, training, and direction to Hizbollah terrorists within the meaning of 28 U.S.C. §§ 1605(a)(7), and 1605 note.

8.      Defendant The Iranian Ministry of Information and Security ("MOIS") is Iran's international and domestic intelligence service. MOIS, acting as an agent of Iran, performed acts which caused the terrorist bombing of Khobar Towers. MOIS assisted Hizbollah's terrorist activities through the provision of material support and resources including funds, training and direction to Hizbollah. MOIS performed these acts while acting within the scope of its agency for Iran, and specifically performed these acts in support of Hizbollah's June 25, 2006 terrorist bombing of Khobar Towers.

9.      This Court has repeatedly held Iran and MOIS liable as state sponsors of Hizbollah's terrorist activities pursuant to 28 U.S.C. § 1605(a)(7).[1] Therefore, Iran and MOIS are barred from denying their liability for the actions of Hizbollah by the doctrine of collateral estoppel.

10.     Defendant the Iranian Islamic Revolutionary Guard Corps a/k/a the Pasdaran (the "Pasdaran") is a non-traditional agency of Iran. The Pasdaran is one of the most powerful

---

[1] *See, e.g., Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 (D.D.C. 2002); *Carlson v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002); *Wagner v. Islamic Republic of Iran*, 172 F. Supp.2d 128 (D.D.C. 2001); *Jenco v. Islamic Republic of Iran*, 154 F.Supp.2d 27 (D.D.C. 2001); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp.2d 27 (D.D.C. 2001); *Anderson v. Islamic Republic of Iran*, 90 F. Supp.2d 107 (D.D.C. 2000); *Higgins v. Islamic Republic of Iran*, Case

organizations in Iran and conducts international and domestic intelligence operations. In addition, the Pasdaran exerts considerable influence on Iranian government policies. It is a powerful military instrument that furthers and defends Iran's fundamentalist Islamic goals, and is dedicated to the spread of fundamentalist Islamic principles throughout the world through acts of terrorism. The Pasdaran, acting as an agent of Iran, provided material support and resources including funds, training, and direction to Hizbollah for its terrorist activities, including the June 25, 1996 terrorist bombing of Khobar Towers. The Pasdaran performed these acts within the scope of its agency for Iran.

11. This Court has repeatedly found the Pasdaran liable as a foreign state sponsor of terrorism pursuant to 28 U.S.C. § 1605(a)(7) for Hizbollah's terrorist acts and killings.[2] Therefore, the Pasdaran is collaterally estopped from denying that it is liable for Hizbollah's actions.

## FACTS

12. In the early 1980's, Iran developed a program of carefully planned terrorist attacks designed to destabilize Middle Eastern governments and spread fundamentalist Islamic principles. MOIS and the Pasdaran were the primary agents that planned, supported, and executed the terrorist acts.

13. In furtherance of this terrorist program, Iran, MOIS, and the Pasdaran established Hizbollah as a terrorist organization tasked with spreading fundamentalist Islamic principles and destabilizing governments through terrorist acts such as kidnapping, torture, and murder.

---

No.1:99cv00377 (D.D.C. September 21, 2000); and *Cicippio v. Islamic Republic of Iran*, 18 F. Supp.2d (D.D.C. 1998).
[2] *See, e.g., Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 (D.D.C. 2002), and *Higgins v. Islamic Republic of Iran*, Case No. 99-0377 (D.D.C. September 21, 2000).

Throughout the 1980's, Iran, MOIS and the Pasdaran provided funds, training, and direction to Hizbollah in furtherance of these goals.

14. Hizbollah established operations in a number of countries by the early 1990's though the use of funds, tactics, and training provided by Iran, MOIS and the Pasdaran. The funds, tactics, and training were provided both within and without the nation of Iran.

15. In the early 1990's, the United States military developed a presence in Saudi Arabia. Iran viewed the presence of United States personnel, including members of the United States armed forces, as supportive of the Saudi monarchy. Iran believed that the Saudi monarchy was pro-Western and corrupt and that a large-scale terrorist operation designed to kill Americans would result in revolution and the subsequent establishment of an Islamic republic in Saudi Arabia. The Iranian government, acting through its agents MOIS and the Pasdaran and in concert with Hizbollah, began preparations for the bombing of a target associated with American interests.

16. In 1995, Iran, through MOIS and the Pasdaran, prepared to execute an attack on an American target. Hizbollah operatives scouted potential American targets in Saudi Arabia, and explosives were smuggled into Saudi Arabia and hidden for later use. An elaborate professional intelligence network was established and tasked with carrying out the bombing.

17. By June 1996, bomb components, including high explosives, incendiary materials, and sophisticated fuses and tools used in the bomb assembly, were stored in Saudi Arabia. Agents of Defendants Iran, MOIS, and the Pasdaran selected and approved Khobar Towers as the target to be destroyed by Hizbollah agents. Khobar Towers, a multi-story apartment building, housed United States Air Force and other United States military personnel.

18.    Airman First-Class Joseph E. Rimkus, a United States citizen and member of the United States Air Force, was stationed in Dhahran, Saudi Arabia, and resided in Khobar Towers in June, 1996. Airman Rimkus, like the other servicemen residing in Khobar Towers, was tasked with enforcing the "no-fly zone" in southern Iraq.

19.    On June 25, 1996, Air Force Sergeant Alfredo Guerrero observed two Hizbollah terrorists park a Mercedes Benz tanker-truck beside the fence line and within 100 feet of the American sector of the Khobar Towers complex. The truck contained a 5,000 pound bomb, and the Hizbollah terrorists immediately fled the scene in a waiting sedan. Sergeant Guerrero, suspicious of the activity surrounding the vehicle, raised the alarm. American military personnel began to exit the Towers. Minutes later, the bomb exploded; the exterior wall of Khobar Towers was destroyed, the building suffered extensive damage, and an eighty-five foot wide crater was created by the blast.

20.    The explosion killed nineteen members of the United States Air Force, including Joseph E. Rimkus.

## COUNT I
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants)

21.    Paragraphs 1 through 20 are incorporated herein by reference.

22.    Defendants, through their employees, appointees, agents, and assigns (including but not limited to Hizbollah), detonated a bomb adjacent to the Khobar Towers complex as set forth above. Defendants thereby intended to kill Americans, including Joseph E. Rimkus, and cause emotional distress and grief to Plaintiff Joseph J. Rimkus. Defendants did, in fact, kill Americans, including Joseph E. Rimkus, and cause such emotional distress and grief to Plaintiff

7

Joseph J. Rimkus. Such terrorist acts constitute extreme and outrageous conduct by Defendants and Hizbollah.

23. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Defendants and Hizbollah, Plaintiff Joseph J. Rimkus suffered extreme emotional distress, including extreme mental anguish, grief, and emotional and physical pain and suffering.

24. Defendants are directly and vicariously responsible for Hizbollah's actions, because Defendants funded, trained, and directed Hizbollah as set forth above. Defendants further acted in concert with Hizbollah in planning and executing the terrorist bombing of Khobar Towers.

25. As a proximate result of Defendants' actions, Plaintiff Joseph J. Rimkus has been injured.

26. For the reasons stated above, Defendants are jointly and severally liable to Plaintiff.

WHEREFORE, Plaintiff Joseph J. Rimkus demands judgment be entered against Defendants Iran, MOIS, and the Pasdaran, jointly and severally, as follows: (1) compensatory damages in the amount of not less than TWENTY MILLION DOLLARS ($20,000,000.00), which amount shall be proven at trial; and (2) whatever further and necessary relief this Court deems proper.

**COUNT II**
**SOLATIUM**
**(Against All Defendants)**

27. Paragraphs 1 through 26 are incorporated herein by reference.

28. Plaintiff Joseph J. Rimkus was deprived of the assistance, society, and companionship of his son, Joseph E. Rimkus, as a direct and proximate result of the willful,

wrongful, intentional, and reckless acts of Hizbollah, Iran, MOIS, and the Pasdaran. This loss caused Joseph J. Rimkus to suffer, amongst other things, substantial grief, bereavement, extreme mental anguish, and emotional and physical pain and suffering.

29. For the reasons stated above, Defendants are jointly and severally liable to Plaintiff.

WHEREFORE, Plaintiff Joseph J. Rimkus demands judgment be entered against Defendants Iran, MOIS, and the Pasdaran, jointly and severally, as follows: (1) compensatory damages in the amount of not less than TWENTY MILLION DOLLARS ($20,000,000.00), which amount shall be proven at trial; and (2) whatever further and necessary relief this Court deems proper.

### COUNT III
### PUNITIVE DAMAGES
(Against Defendants MOIS and Pasdaran)

30. Paragraphs 1 through 29 are incorporated herein by reference.

31. The actions of Defendants, acting in concert to carry out their unlawful objectives, were malicious, willful, wanton, and reckless in their disregard of the life of Joseph E. Rimkus. Defendants intended to carry out actions that would kill persons occupying Khobar Towers, including Joseph E. Rimkus. The actions of Hizbollah were undertaken at such time as the organization was operating for, under the direction of, and in the service of Defendants. Defendants are therefore vicariously liable to Plaintiff for the actions of Hizbollah.

32. Defendants MOIS and the Pasdaran are officials, agents, and/or employees of Iran who performed the outrageous acts set forth herein within the scope of their offices, agencies, and/or employment. These acts caused the extrajudicial killing of Joseph E. Rimkus.

33.     For the reasons stated above, Defendants MOIS and the Pasdaran are jointly and severally liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff Joseph J. Rimkus demands judgment be entered against Defendants MOIS and the Pasdaran, jointly and severally, as follows: (1) punitive damages in the amount of not less than THREE HUNDRED MILLION DOLLARS ($300,000,000.00), which amount shall be proven at trial; and (2) whatever further and necessary relief this Court deems proper.

Respectfully submitted,

By: _____
Peter C. Grenier, Esquire (DC Bar # 418570)
BODE & GRENIER, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036
(202) 828-4100 (telephone)
(202) 828-4130 (facsimile)
Counsel for Plaintiff

Dated: June 19, 2006