UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH J. RIMKUS )<br>)<br>      Plaintiff )<br>)<br>v. )<br>)<br>ISLAMIC REPUBLIC OF IRAN, et al. )<br>)<br>      Defendants. )<br>) | Case No. 1:06CV01116 (RCL) |

## PLAINTIFF'S TRIAL BRIEF

Plaintiff Joseph J. Rimkus, by counsel, hereby submits the following Trial Brief in anticipation of the January 4, 2008 hearing in this matter.

### FACTS

#### I.   The Khobar Towers Bombing

This action arises out of the June 25, 1996 terrorist bombing of the Khobar Towers complex in Dhahran, Saudi Arabia (the "Khobar Towers bombing"). Nineteen American servicemen were killed in the attack, including Airman First-Class Joseph E. Rimkus ("Airman Rimkus"). Plaintiff, Joseph J. Rimkus ("Mr. Rimkus"), is the father of Airman Rimkus.

Terrorist members of Hizbollah, funded by Defendant Islamic Republic of Iran ("Iran"), planned and committed the bombing. Defendants the Iranian Ministry of Information and Security (the "MOIS") and the Iranian Islamic Revolutionary Guard Corps (the "IRGC" or the "Pasdaran") funded, trained, and otherwise assisted Hizbollah in executing the bombing.

Mr. Rimkus alleges a claim for intentional infliction of emotional distress. He seeks

recovery for his damages, including: extreme emotional distress; mental anguish; grief; and emotional and physical pain and suffering. Mr. Rimkus further seeks punitive damages against the Pasdaran.

### II. Defendants' Liability

This Court has previously recognized Defendants' liability for the Khobar Towers bombing. *See e.g. Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 229 (D.D.C. 2006); *Campbell v. Islamic Republic of Iran*, 466 F.Supp.2d 229 (D.D.C. 2006); *Blais v. Islamic Republic of Iran*, 459 F.Supp.2d 40 (D.D.C. 2006).

### III. Defendants' Default

Pursuant to 28 U.S.C. § 1608(a)(4), Defendants were properly served with the Complaint and all other required papers on July 30, 2007. Defendants failed to respond.

On December 4, 2007, the Clerk entered Defendants' default in this matter.

The Court has set a hearing in this matter for January 4, 2008 (the "Hearing").

### JURISDICTION AND VENUE

Defendants are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1602-1611, *et seq.* (2007) (the "FSIA").

The FSIA waives the sovereign immunity of foreign states (and their employees and agents) when the defendants are alleged to be liable on the basis of an extrajudicial killing, and when the foreign state has been designated as a state sponsor of terrorism. Mr. Rimkus alleges that Defendants engaged in extrajudicial killings resulting from the Khobar Towers Bombing. On September 13, 1990, the United States Secretary of State designated Iran as a state sponsor of terrorism pursuant to the Export Administration Act of 1979, 50 U.S.C. § 2405(j) (2007). 55 Fed.

Reg. 37793-01. Such designation has remained for all times relevant hereto.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f) (2007).

## STATEMENT OF CLAIMS

Mr. Rimkus alleges a claim for intentional infliction of emotional distress. He requests an award of compensatory damages against Defendants jointly and severally. He requests an award of punitive damages against the Pasdaran.

Mr. Rimkus requests compensatory damages, against Defendants jointly and severally, in an amount to be proven by the evidence, and in any case not less than $5,000,000.00. Mr. Rimkus requests punitive damages against the Pasdaran in an amount to be proven by the evidence, and in any case not less than $300,000,000.00.

**I.    Liability**

    **a.  Standard**

Defendants have not responded or appeared in this matter, and Mr. Rimkus requests a default judgment against them.

The FSIA states that "no judgment by default shall be entered by a court of the United States ... against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e) (2007).

At the Hearing, Mr. Rimkus will meet his Section 1608(e) obligations, and "establish his claim by evidence satisfactory to the court." First, Mr. Rimkus expects to move this Court to take judicial notice of its previous decisions in which Defendants were found liable for planning, funding, and conspiring to execute the Khobar Towers bombing. *See Heiser*, 466 F.Supp.2d 229;

*Campbell v. Islamic Republic of Iran*, 466 F.Supp.2d 229; *Blais*, 459 F.Supp.2d 40. Second, Mr. Rimkus expects to present evidence, including certified trial transcripts, which proves Defendants' liability for planning, funding, and conspiring to execute the Khobar Towers bombing.

The FSIA waives Defendants' immunity, but does not create a substantive cause of action. *See Heiser*, 466 F.Supp.2d at 265-266. At the Hearing, Mr. Rimkus expects to present evidence that will prove Defendants' liability under Count I of the Complaint – Intentional Infliction of Emotional Distress – as governed by Missouri law.

### b. This Court Previously Found Defendants Liable for the Khobar Towers Bombing, and for the Extrajudicial Killing of Airman Rimkus

"[A] court may take judicial notice of related proceedings and records in cases before the same court." *Heiser*, 466 F.Supp.2d at 263 (quoting *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 109 n.6 (D.D.C. 2005)).

In *Blais*, this Court recognized Defendants' liability for the Khobar Towers bombing. *Blais*, 459 F. Supp. 2d at 56-57. In *Heiser*, this Court "[took] judicial notice of the findings made in *Blais* as to the defendants['] involvement in and liability for the Khobar Towers bombing." *Heiser*, 466 F.Supp.2d at 263. Indeed, this Court found Defendants liable for the death of Airman Rimkus, and awarded damages to Airman Rimkus's mother, brother, and sister (*i.e.* Ms. Bridget Brooks, Mr. James Rimkus, and Ms. Anne Rimkus). *Heiser*, 466 F.Supp.2d at 295-299.

At the Hearing, Mr. Rimkus expects to ask that the Court take judicial notice of its findings – in *Blais* and *Heiser* – that Defendants are liable for planning, funding, and conspiring to execute the Khobar Towers bombing, and that such actions caused the extrajudicial killing of

4

Airman Rimkus. Such judicial notice is proper pursuant to this Court's holdings in *Heiser* and *Salazar*, and sufficient to meet Mr. Rimkus's Section 1608(e) obligations.

### c. Defendants' Liability is Shown by the Evidence

In a FSIA default proceeding, a plaintiff may enter into evidence certified transcripts of relevant testimony that was presented in related proceedings. *See Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 22 (D.D.C. 2001). Such evidence can be sufficient to meet a plaintiff's Section 1608(e) obligations. *See Id*.

At the Hearing, Mr. Rimkus expects to introduce evidence showing Defendants' liability for the Khobar Towers bombing and the extrajudicial killing of Airman Rimkus. Such evidence is referenced in the Exhibits listed below, and includes certified transcripts of: testimony by U.S. Air Force personnel who witnessed the Khobar Towers bombing; testimony by former FBI Director Louis Freeh and former Deputy Counterterrorism Chief Dale Watson, who investigated the Khobar Towers bombing; testimony by Dr. Bruce Tefft, who investigated the Khobar Towers bombing, and who was a founding member of the CIA's counterterrorism bureau.

### d. Defendants Are Liable to Mr. Rimkus Pursuant to Missouri Law

The FSIA waives Defendants' immunity, but does not create a substantive cause of action. *See Heiser*, 466 F.Supp.2d at 265-266. "Once a foreign state's immunity has been lifted under [the FSIA], the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." *Id*. at 265 (internal citations and quotations omitted). The FSIA "acts as a 'pass-through' to substantive causes of action" that exist under federal, state, or international law. *Id*.

Here, "the law of the United States applies rather than the law of the place of the tort or

any other foreign law because the United States has a 'unique interest' in having its domestic law apply in cases involving terrorist attacks on United States citizens." *Id*. at 266. Under District of Columbia choice of law rules, the law of a plaintiff's domicile at the time of a terrorist attack governs the plaintiff's recovery. *Id*.

In this case, Missouri law provides a basis for Mr. Rimkus's claims. Mr. Rimkus is expected to testify at trial that he was a legal resident of Kirkwood, Missouri on June 25, 1996, the date of the Khobar Towers bombing. Count I of the Complaint alleges claims for intentional infliction of emotional distress. Complaint at ¶¶21-26.

As this Court previously held, Missouri law "recognize[s] the existence of a cause of action for intentional infliction of emotional distress, rooted in Section 46 of the Restatement (Second) of Torts." *Peterson v. Islamic Republic of Iran*, Consolidated Civil Actions: 01-2094(RCL), 01-2684(RCL), 2007 U.S. Dist. LEXIS 65820, at *16 (D.D.C. 2007). Under Missouri law, the elements of intentional infliction of emotional distress are satisfied if: "(1) the defendant engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the defendant's conduct is the actual and proximate cause of the plaintiff's emotional distress." *Id*. at *17. Furthermore, "plaintiffs domiciled in ... Missouri ... at the time of [a terrorist] attack may bring a claim for IIED ... because the attack was directed at them as well as those killed in the attack." *Id*. at *25.

In *Blais* and *Heiser*, this Court found that the Khobar Towers bombing constituted extreme and outrageous conduct by Defendants. *Blais*, 459 F. Supp. 2d at 56-57; *Heiser*, 466 F.Supp.2d at 286,298. At the Hearing, Mr. Rimkus expects to present evidence proving that he

suffered severe and extreme emotional distress as a direct and proximate result of the Khobar Towers bombing.

## II. Compensatory Damages

"In determining the appropriate amount of compensatory damages, the Court may look to prior decisions awarding damages for pain and suffering, and to those awarding damages for solatium." *Heiser*, 466 F.Supp.2d at 269 (citing *Prevatt v. Islamic Republic of Iran*, 421 F. Supp. 2d 152, 160 (D.D.C. 2006)). The amount of compensatory damages awards is "determined by the nature of the relationship between the family member and victim, and the severity of the pain suffered by the family member." *Id*. Although the loss suffered by parents of terrorism victims "is undeniably difficult to quantify," courts most often award "approximately $5 million to a parent whose child was killed." *Id*.

Mr. Rimkus expects to present testimonial and documentary evidence demonstrating that he and Airman Rimkus had an extraordinarily close relationship, and that he has suffered tremendous pain as a result of Defendants' actions. Mr. Rimkus expects to present testimonial evidence from himself, as well as Mrs. Janet Rimkus (his wife), and Dr. Dana Cable (an expert in thanatology and grief counseling).

Mr. Rimkus expects to request compensatory damages in an amount not less than $5,000,000.00.

## III. Punitive Damages

Punitive damages are not recoverable against a foreign state, or against divisions of a foreign state that are considered to be part of the state itself. *Heiser*, 466 F.Supp.2d at 270 However, punitive damages are recoverable against an agent or instrumentality of a foreign state

7

if the agent is sufficiently commercial. *Id*. (holding, "entities that are governmental are considered a part of the foreign state itself, while commercial entities are deemed agencies or instrumentalities of the foreign state, and thereby subject to punitive damages."). A plaintiff "has an affirmative burden of producing evidence that the entity is commercial." *Id*.

This Court recently held that the Pasdaran is sufficiently commercial to be considered an agency or instrumentality of Iran, and thereby subject to punitive damages. *Bayani v. Islamic Republic of Iran*, Civil Action 04-01712 (HHK), 2007 U.S. Dist. LEXIS 85164, at *16 (D.D.C. 2007).

Mr. Rimkus expects to ask the Court to take judicial notice of *Bayani*'s determination that the Pasdaran is a commercial entity. Further, Mr. Rimkus expects to introduce into evidence the sworn affidavit of Dr. Patrick Clawson, an expert on Iranian politics and economics. In Section 1608(e) proceedings, "[a] [p]laintiff's evidence may take the form of sworn affidavits." *Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 82 (D.D.C. 2006) (citing *Weinstein*, 184 F. Supp. 2d at 19).

Dr. Clawson testified in *Bayani* regarding the Pasdaran's commercial nature, the Pasdaran's support for terrorism, the Pasdaran's budget, and the likely deterrent effect of a punitive damages award against the Pasdaran. Mr. Rimkus also expects to introduce into evidence a certified transcript of Dr. Clawson's testimony in *Bayani*.

In addition, Mr. Rimkus expects to introduce into evidence documents demonstrating the Pasdaran's commercial nature. Such documents include Congressional resolutions which highlight the Pasdaran's commercial nature, Executive Order 13224, which recognizes the Pasdaran's commercial nature, and press accounts of the Pasdaran's commercial activities.

"In determining the proper punitive damages award, courts evaluate four factors: (1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiff that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Bodoff*, 424 F. Supp. 2d at 88 (citing *Acree v. Republic of Iraq*, 271 F. Supp. 2d 179, 222-23 (D.D.C. 2003).  Mr. Rimkus expects to present testimonial and documentary evidence regarding the character of the Pasdaran's actions, the nature and extent of the harm suffered by him, and the need for deterrence.  Mr. Rimkus expects to present evidence, *via* affidavit and certified transcript, regarding the Pasdaran's wealth.

Mr. Rimkus expects to request punitive damages against the Pasdaran in an amount not less than $300,000,000.00.  In cases involving Iranian terrorism, this Court's analysis "typically results in punitive damages in an amount three times Iran's annual expenditure on terrorism, or $300,000,000." *Bodoff*, 424 F. Supp. 2d at 88.

## SCHEDULE OF WITNESSES

Mr. Rimkus expects to call the following witnesses to testify at the Hearing.  The witnesses are listed in the order in which they are expected to testify.  Expert witnesses are marked with an asterisk.

1. **Joseph J. Rimkus.**    Mr. Rimkus resides in Valrico, Florida, and is the Plaintiff in this case.  He is Airman Rimkus's father.  He will testify concerning Airman Rimkus's life, his relationship with Airman Rimkus, and the anguish, pain, and suffering caused by Airman Rimkus's death.  Mr. Rimkus's testimony will last approximately 2 hours.

2. **Janet Rimkus.**    Mrs. Rimkus resides in Valrico, Florida, and is married to Mr. Rimkus.  She will testify concerning Airman Rimkus's life, Mr. Rimkus's relationship with

9

Airman Rimkus, and the anguish, pain, and suffering caused by Airman Rimkus's death to Mr. Rimkus. Further, she will testify regarding the effect of Airman Rimkus's death on Mr. Rimkus' life and relationships. Mrs. Rimkus's testimony will last approximately 1.5 hours.

       3.     **Dana Cable, Ph.D.**\*  Dr. Cable is an expert in grief counseling and thanatology. Mr. Rimkus expects to present Dr. Cable's testimony *via* videotape, because Dr. Cable will be unavailable and outside the United States on the date of the Hearing. Dr. Cable will testify regarding the grief process, as well as the anguish, pain, and suffering caused by Airman Rimkus's death to Mr. Rimkus. Dr. Cable's testimony will last approximately 30 minutes.

       4.     **Patrick L. Clawson, Ph.D.**\*  Dr. Clawson is a widely renowned expert in Iranian politics, economics, and support for terrorism. Dr. Clawson is Deputy Director for Research at the Washington Institute of Near East Policy. Mr. Rimkus expects to present Dr. Clawson's testimony via affidavit, because Dr. Clawson will be unavailable on the date of the hearing, and Dr. Clawson's testimony in this matter is consistent with his prior testimony in this Court in *Bayani*. Dr. Clawson's affidavit will address the governmental structure of Iran, the Pasdaran's commercial activities, the Pasdaran's budget, and the deterrent effect of a punitive damages award against the Pasdaran.

## EXHIBITS

Mr. Rimkus expects to introduce the following exhibits into evidence. Mr. Rimkus reserves the right to amend or supplement this list, and to introduce into evidence exhibits identified between the date of this filing and the date of the Hearing.

| Exhibit # | Item Description | I.D. | ADM. |
|---|---|---|---|
| 1 | Videotaped testimony of Dana Cable, Ph.D. | | |
| 2 | Dana Cable, Ph.D.'s *curriculum vitae* | | |
| 3 | Divorce Decree – Joseph J. Rimkus and Bridget Rimkus | | |
| 4 | Joseph E. Rimkus's Birth Certificate | | |
| 5 | Photograph of four generations of Joseph Rimkuses | | |
| 6 | Photograph of Mr. Rimkus and Airman Rimkus working together | | |
| 7 | Photograph of Mr. Rimkus and Airman Rimkus working together | | |
| 8 | Airman Rimkus's USAF photograph | | |
| 9 | 1995 letter from Airman Rimkus to Mr. Rimkus | | |
| 10 | Post-bombing photograph of Khobar Towers | | |
| 11 | 1996 Father's Day card from Airman Rimkus to Mr. Rimkus | | |
| 12 | Photograph of memorial at Eglin Air Force Base | | |
| 13 | Photographs of memorial at Eglin Air Force Base | | |
| 14 | Photograph of memorial at Shepherd Air Force Base | | |
| 15 | Photograph of Mr. Rimkus's memorial to Airman Rimkus | | |
| 16 | Photograph of Mr. Rimkus's memorial to Airman Rimkus | | |
| 17 | Newspaper article regarding Airman Rimkus | | |
| 18 | Newspaper article regarding Airman Rimkus | | |
| 19 | Painting by Airman Rimkus | | |
| 20 | Photograph of memorial service in Illinois | | |
| 21 | Photograph of Airman Rimkus's headstone in Illinois | | |
| 22 | Photograph of Airman Rimkus's grandfather's headstone in Illinois | | |
| 23 | Certified transcript of Staff Sergeant Jerry Sasser's testimony in *Hesier v. Islamic Republic* | | |

| | | | |
|---|---|---|---|
| | *of Iran* | | |
| 24 | Certified transcript of Colonel Thomas Shafer's testimony in *Hesier v. Islamic Republic of Iran* | | |
| 25 | Certified transcript of Staff Sergeant Alfredo Guerrero's testimony in *Hesier v. Islamic Republic of Iran* | | |
| 26 | Certified transcript of Technical Sergeant Selena P. Zuhoski's testimony in *Hesier v. Islamic Republic of Iran* | | |
| 27 | Certified transcript of Colonel Douglas Cochran's testimony in *Hesier v. Islamic Republic of Iran* | | |
| 28 | Certified transcript of Louis Freeh's testimony in *Hesier v. Islamic Republic of Iran* | | |
| 29 | Certified transcript of Dale Watson's testimony in *Hesier v. Islamic Republic of Iran* | | |
| 30 | Certified transcript of Patrick Clawson, Ph.D.'s testimony in *Hesier v. Islamic Republic of Iran* | | |
| 31 | Certified transcript of Thomas Parsons, M.D.'s testimony in *Hesier v. Islamic Republic of Iran* | | |
| 32 | Report of Casualty for Airman Rimkus | | |
| 33 | Indictment | | |
| 34 | October 8, 2002 Statement of Louis Freeh | | |
| 35 | October 8, 2002 Transcript of Louis Freeh's testimony before the Joint Intelligence Committee | | |
| 36 | May 20, 2003 *Wall Street Journal* article by Louis Freeh | | |
| 37 | 1995 Patterns of Global Terrorism | | |
| 38 | 1996 Patterns of Global Terrorism | | |
| 39 | Certified transcript of Dr. Bruce D. Tefft's testimony in *Blais v. Islamic Republic of Iran* | | |
| 40 | Dr. Bruce D. Tefft's *curriculum vitae* | | |
| 41 | U.S. Department of State publication: Significant Incidents of Political Violence Against Americans | | |
| 42 | Louis Freeh: *Remember Khobar Towers* | | |
| 43 | Matthew Levitt: *Iranian State Sponsorship of Terror* | | |
| 44 | Qods (Jeruselam) Force, Iranian Revolutionary Guard Corps | | |
| 45 | A Look at Iran's Sponsorship of Terror Groups | | |
| 46 | Nawaf Obaid: *Why Iran Protects Al Qa'eda?* | | |
| 47 | Report to the U.S. President and Congress on the Protection of U.S. Forces Deployed Abroad | | |

| 48 | Affidavit of Patrick Clawson, Ph.D. | | |
|---|---|---|---|
| 49 | Patrick Clawson, Ph.D.'s *curriculum vitae* | | |
| 50 | HR 1400 | | |
| 51 | S11911 | | |
| 52 | September 24, 2001 Executive Order | | |
| 53 | Time Magazine Article: *Iran's Rich Revolutionary Guard* | | |
| 54 | Certified transcript of Patrick Clawson, Ph.D.'s testimony in *Bayani v. Islamic Republic of Iran* | | |
| 55 | Photograph of Joe and Mr. Rimkus in St. Louis Airport | | |

Respectfully submitted,

_____*Peter C. Grenier /s/*_____
Peter C. Grenier (D.C. Bar No. 418570)
Bode & Grenier, LLP
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, DC 20036
Telephone: (202) 828-4100
Facsimile:  (202) 828-4130
Counsel for plaintiff

Dated: December 24, 2007